**Charles Richard ROTH,**
**Plaintiff-Counterclaim**
**Defendant, Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Counterclaim**
**Plaintiff, Appellant.**

No. 85–7192.

United States Court of Appeals,
Eleventh Circuit.

Jan. 16, 1986.

Glenn L. Archer, Jr., Asst. Atty. Gen., U.S. Dept. of Justice, Tax Div., Wash-

ington, D.C., Michael L. Paup, Chief, Richard Farber, Nancy G. Morgan, Attys., Appellate Section, U.S. Dept. of Justice, Washington, D.C., Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., for defendant-counterclaim plaintiff, appellant.

John Joseph Smith, Jr., Birmingham, Ala., for plaintiff-counterclaim defendant, appellee.

Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal by the United States from a denial by the trial court of a motion for j.n.o.v. after a jury had found that the appellee, Roth, was not a "responsible person" within the meaning of Section 6672 of the Internal Revenue Code of 1954 who would be required "to collect such tax, and truthfully account for and pay over such tax" to the United States government.

## I. STATEMENT OF THE CASE

Taxpayer, Charles Richard Roth, filed this suit to recover $200.00 which he had paid on a penalty of $22,805.26 imposed against him pursuant to Section 6672 of the Internal Revenue Code of 1954,[1] for failure to collect and pay over federal employment taxes withheld from the wages of the employees of Leewood Development Corp. (later Leewood, Inc.) for the last two quarters

of 1977. The United States filed a counterclaim against taxpayer for the unpaid balance of the assessment amounting to $22,-637.89 plus interest. The case was tried to a jury which returned a verdict that taxpayer was not a person responsible for the unpaid employment taxes with respect to the stated quarters. The government, having moved for directed verdict, thereafter moved for judgment notwithstanding the verdict which was denied in an opinion and order entered on January 9, 1985.

## II. STATEMENT OF FACTS

With a single exception, the facts that went to the jury were undisputed. The one exception is the conflict in testimony between the plaintiff, Roth, and Dobbins, the chief executive officer and president and majority owner of the corporation. Roth testified that he was instructed by Dobbins in August of 1977 not to pay the withheld employees' taxes, but to pay other creditors and the salaries of the employees. Dobbins denied that he gave such instructions and denied that he knew the taxes were unpaid. Thus, the only issue presented to the jury was that presented by a charge to the jury, duly objected to by the United States, as follows:

Even if you, the jury, find that plaintiff is otherwise a responsible person within the meaning of the statute, but also find that the plaintiff was prevented from paying the payroll taxes by specific instructions by the president of the company, then you must find that plaintiff did not willfully fail to pay the payroll taxes and plaintiff must be relieved of liability.

As we have stated above, the evidence which would establish the fact that the

---

1. Section 6672(a) provides:
   SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.
   (a) [as amended by Sec. 9(a), Act of November 10, 1978, Pub.L. No. 95–628, 92 Stat. 3627] *General Rule.* Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and

   pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

"plaintiff is otherwise a responsible person within the meaning of the statute" is undisputed. Essentially, it is as follows.

Roth was offered an opportunity to participate in a small corporation to be organized by Dobbins who was a real estate developer and who was a beneficiary of a trust which owned the majority stock in a number of other real estate corporations. After incorporation of Leewood Development Corporation ("LDC"), whose name was later changed to Leewood, Inc., Roth was named executive vice president and Dobbins became president and chairman of the board. Roth was not a director. LDC was engaged in contracting with builders for performing part of construction projects, such as putting sheet rock in buildings under construction. Initially, LDC and Roth and his secretary and bookkeeper had offices in the same complex as Dobbins and his other companies. Within a year, however, Leewood moved away into a warehouse which was used for the storing of material used in its construction work. At all times, Roth hired office employees and signed checks for the payrolls, including his salary of $700.00 a week. He paid substantially all bills for supplies and signed the checks paying to the United States the amount deducted from the employees as payroll deductions, so long as these were paid. Roth had signature authority on all of the company's checking accounts and he drew most of the checks, including those for his weekly salary until he resigned towards the end of the second quarter of 1977. He signed as the officer of the company a mortgage for $115,000.00 secured by property belonging to Dobbins and which was also endorsed by Dobbins. Roth was given an option to buy up to 50 percent of LDC's corporation stock which he never exercised. Taxpayer made the contracts which the company performed and, according to his testimony, he handled "the day to day operations of Leewood Development Corporation." From the middle of August, 1977, taxpayer was aware of the fact that the payroll taxes were not

being remitted to the United States although he had at all times known of the obligation of the company to transfer them. During the period involved, the company had more than sufficient funds to have paid all of the withheld taxes.

According to the verdict of the jury, it must have believed Roth's testimony that he told Dobbins in August, 1977, that the company did not have the funds necessary to pay the payroll taxes.

The jury must also have accepted the following testimony by Roth:

BY MR. SMITH:

Q. Let me ask it this way, then, Rick. Were you aware that the payroll taxes had not been paid?

A. Yes, sir.

Q. When were you made aware of that?

A. Approximately the middle of August of '77.

Q. Okay. Who made it aware to you?

A. Kathy Hosmar [the company's bookkeeper].

Q. Okay. What did you do when you were aware that Leighwood didn't have sufficient funds to pay the payroll taxes?

A. I contacted Mr. Dobbins to see what would be done at that point.

Q. Did you have a conversation?

A. Yes, sir.

Q. What was that conversation?

A. The conversation was that what was we going to do in getting the money to the company to pay the taxes and when would it be in there and how was we going to pay it.

Q. And what did he tell you?

A. He came over to the office—

MS. PRIVETT: I'm going to object, Your Honor, again, on the same purposes.

THE COURT: Overruled. This goes to the authority and it goes to the issue of wilfulness.

BY MR. SMITH:

Q. Okay. What did Mr. Dobbins tell you, Rick?

A. He came to the office and he looked at the amount of taxes that was owed and we had a discussion on where we could come up with the money.

And his conversation with me was that he had some apartments that would be sold and, upon the sale of those apartments, he would put the necessary funds in the company to pay the taxes.

Q. Did he give you any instructions—

A. At that time—

Q. About who to pay and who not to pay?

A. At that time, he was thinking that the apartments would close very soon. So his instructions to me was to be sure to make the payroll and pay the creditors so we could stay in business, that these apartments could close and he could pay the taxes and not to pay the taxes, and it would put the company in bankruptcy.

Q. What did you do?

A. I done what Mr. Dobbins told me to do. I made the payroll and paid the creditors that was necessary to keep getting the material, waiting for the apartments to close so that we might be able to pay the taxes.

Q. And this was in August of '77, you say?

A. Yes, sir.

Q. Did you talk to him at any time subsequent to August of '77 about payroll taxes?

A. Not to my knowledge, because it was August before I was aware that the taxes was—

Q. After August, did you talk to him about these payroll taxes?

A. Almost weekly.

Q. What was his response?

A. Well, the response that I got was that whatever the problem was, it was a problem with closing on the apartments due to some zoning laws in Vestavia, and it was going to take longer than he first anticipated to close the apartments and come up with case.

Q. What instructions, if any, did he give you?

A. To continue to keep the company going until he could close those apartments and pay those taxes.

R., Vol. II, p. 79.

Thus, it is plain that we have a case in which it is clear that Roth was a responsible person within the contemplation of the Act, unless he was removed from that status by the instructions given him by Dobbins. Although Dobbins testified that he did not give Roth any such instructions, because he did not even know that the payments on the 941 forms were past due until the end of November, 1977, we must treat the case as if the jury believed Roth's testimony with respect to this rather than that of Dobbins.

## III. DISCUSSION

The sole issue before the Court is whether it is true that an otherwise responsible person under the Act sheds that status if, after the taxes are withheld, and while they are being continually withheld, such responsible person is directed by an officer with authority to control his actions as to corporate affairs not to pay the government's trust funds to the Internal Revenue Service. Initially, we must consider the nature of the funds we are talking about. They are amounts which LDC deducted from the payroll checks given to its employees for the payment of the employee's income tax and Social Security taxes, together with the amount that LDS itself owed as Social Security taxes for the employees. Next, we must realize that the statute that requires these funds to be withheld by an employer makes these trust funds of the United States. Also, such withholding is treated by the IRS as payment by the employees of their taxes.

Section 7501 of the Internal Revenue Code provides:

A. *Liability for taxes withheld or collected.*

(a) *General rule.*—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

We must bear in mind that, even after he was instructed by Dobbins not to pay the government its withheld funds, taxpayer as manager of the day to day affairs of the company, caused deductions to continue to be made from the weekly pay checks given to the company's employees, fully knowing that he would not transmit such funds to the government. We must also remember that it was not until the middle of August, or the middle of the third quarter of 1977, that Roth was instructed by Dobbins not to pay the withheld funds to the IRS. Since Roth knew that payments were required at least biweekly, according to his testimony, he was certainly the responsible officer up until the time he was told by Dobbins to stop making such payments, even on the assumption that he lost such status after having been so instructed.

There is no dispute between the parties about the fact that more than one person may be a "responsible person" for an employer. *Mazo v. United States,* 591 F.2d 1151 (5th Cir.1979)[2]; *Moore v. United States,* 465 F.2d 514 (5th Cir.1972).

The Court of Appeals for the Fifth Circuit has held that "responsibility" in this context is "status, duty, and authority not knowledge." *Mazo, supra,* at 1156. Most of the cases cited by appellee deal with decisions as to what constitutes a "responsible person" without any reference to directions given by a superior officer. *Neckles v. United States,* 579 F.2d 938 (5th Cir.1978); *Brown v. United States,* 464 F.2d 590 (5th Cir.1972); *Liddon v. United States,* 448 F.2d 509 (5th Cir.1971). However, the government cites one case which deals with the same problem that is presented here. In *Howard v. United States,* 711 F.2d 729 (5th Cir.1983) (a case which is not a binding precedent for us), the Court held that a person who was otherwise a "responsible person" within the contemplation of the statute remained liable for failure to pay over the withheld funds to the United States in spite of the fact that he had been instructed by the CEO of the corporation not to pay the IRS anything. The Court stated:

The fact that Jennings (the CEO) might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment. *See Brown,* 464 F.2d [590] at 591, n. 1 (5th Cir.1972) ("responsible person" need not have final word on payment of bills and taxes). Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means effective *power* to pay. That Howard had this authority is demonstrated by the fact that he did issue small checks without Jennings' approval on a number of occasions. *Commonwealth National Bank [v. U.S.],* 665 F.2d [743] at 752 [ (5th Cir.1982) ]. Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations. Faced with the possibility of leaving the frying pan with only minor burns, Howard chose instead to stay on in the vain hope of avoiding the fire. While we appreciate the difficulty of his position, we cannot

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

condone his abdication of the responsibility imposed upon him by law. *See Moore*, 465 F.2d at 517 (corporate officers who merely followed their superiors' instructions in issuing checks to creditors were nevertheless "responsible persons").

*Id.* at 734–35 (footnote omitted.)

The trial court in the instant case noted the *Howard* decision but expressly declined to follow it, stating that to follow the precept of *Howard* would be to condone the corporation's vice president's using corporation money contrary to the instructions of the president and that this would be equated with embezzlement.

We perceive a reason, beyond that stated in *Howard* for rejecting Roth's argument here. That is, that the funds which accumulated in the bank account of LDC by reason of withholding the Social Security taxes and income taxes owed by the employees to the federal government became trust funds of the United States. With respect to those funds, the federal statute created a distinct and definite obligation on every responsible officer. That obligation was to remit such funds to the Internal Revenue Service. In our view, no instruction by the president or the majority owner of LDC could effectively bar an otherwise responsible officer from paying these funds in accordance with the law. Although in the company's bank accounts, the company was in effect an interloper with respect to that part of the bank account that represented the trust funds accumulated because of the payment by the employees of their federal taxes. Roth once having become an "otherwise responsible person" to pay over the taxes became obligated by statute to pay these funds to the Internal Revenue Service. He was under no obligations to obey instructions from his corporate supervisor not to do so. Moreover, it should be borne in mind as noted above, that during the second half of 1977, Roth received over $8,000 by checks signed by him knowing that the corporation was obligated to use these funds to pay the debt to the government.

We conclude that the result in *Howard* was correct for the reasons stated there and in light of the additional considerations which we have stated here.

The judgment is **REVERSED** and the case is **REMANDED** to the district court with directions that it enter a judgment for the defendant and cross-appellant j.n.o.v.

GODBOLD, Chief Judge, concurring in part and dissenting in part:

I concur in the holding that the government was entitled to judgment n.o.v. for the statutory penalty arising out of failure of the corporation to pay over withheld taxes for the third quarter of 1977. I cannot agree that judgment n.o.v. was properly granted based upon failure to pay for the fourth quarter of 1977. Whether Roth is liable for the corporation's failure to pay in the fourth quarter is an issue to be decided by a properly instructed jury.

The jury found, in response to interrogatories, that Roth was not "a person responsible to collect, truthfully account for and pay over income taxes and social security taxes withheld from the wages of the Corporation's employees ending for the third quarter of 1977", and made the same finding with respect to the fourth quarter. This court concludes, as a matter of law, that under the evidence Roth was a "person responsible" with respect to both quarters, and implicitly holds that the jury instruction quoted in its opinion concerning the effect of specific instructions given Roth by the president of the company was erroneous.

I. Was Roth a person responsible for payment of withheld taxes and for what period?

Roth was a corporate employee employed at will and charged with day-to-day operation of a small corporation engaged mostly in installing dry walls in construction jobs. He found work, supervised work, purchased materials, and paid for materials. The corporate bookkeeper kept him in-

formed. He signed most checks, including salary checks. He signed the quarterly tax withholding forms (941's) for the last two quarters of 1977.

Roth was not a director of the corporation but was designated as executive vice president. He was not even a stockholder. Dobbins, the president and chairman of the board, and his family owned all the stock. The by-laws vested management of the corporation in the board of directors, who must be stockholders, and general supervision of the business in the president. No one suggests that Roth was an alter ego. There is no proof that under the by-laws of the corporation the executive vice president had authority to handle or disburse funds. In short, Roth had authority to handle corporate funds because the corporation, through president Dobbins, conferred it upon him. He did not, either expressly or by implication, otherwise possess the authority to handle money.

The government has not even made an assessment against Dobbins.

Whether one is the person responsible so as to fall within § 6672 "is a matter of status, duty and authority, not knowledge." *Mazo v. U.S.*, 591 F.2d 1151, 1156 (5th Cir.), *cert. denied sub nom., Lattimore v. U.S.*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Roth enjoyed status and authority until late August, when—the jury necessarily found—he was instructed by president Dobbins, who was in sole control of the corporation, not to pay out of corporate funds the corporation's obligation for withheld taxes. To be a responsible person for a tax quarter, one need not be a responsible person at the end of the quarter so long as responsible during the quarter. *Brown v. U.S.*, 591 F.2d 1136, 1140 (5th Cir.1979). Thus because Roth was a responsible person until late July, he is obligated for all of the July-September

1977 quarter.[1] This continuation of authority to the end of the quarter, whether or not actually possessed to that time, vindicates the interest of the government that responsibility for a quarter may not be avoided by an intra-quarter shift of authority.[2]

Responsibility to pay the taxes for the October-December quarter presents a number of issues. Arguably, as a matter of law, a mere employee authorized to handle corporate funds by delegation from the president, and not otherwise authorized, ceases to be a responsible person once his delegated authority is removed (subject to his being responsible to the end of the quarter, pursuant to *Brown*). At a minimum, stripping such an employee of his authority to pay taxes before a quarter commences creates a jury issue of whether he continues to be a responsible person for the new quarter during which he had no actual authority to pay taxes. This court does not hold that Roth's partial loss of authority was a sham. Rather it seems to say that, because he once had unlimited authority to disburse corporate funds, a limitation by the corporation, as a matter of law, could not relieve him of the responsibility imposed by the statute.

In applying § 6672 some recognition must be given to the law governing corporate affairs. The status and authority of a corporate employee can be withdrawn: if derived from the by-laws, by amendment; if implied from office, by removal; and if conferred through delegation, by withdrawal. Presumably if the president had fired Roth in August, this court would not have held that he was a responsible person for the October-December quarter. Presumably, also, the same result would be reached if in August the corporation removed Roth's authority to handle corporate funds in any respect. The corporation em-

---

1. Under Roth's own testimony neither willfulness nor "reasonable cause" for the period July 1 to late August was an issue. See Part II, below.

2. Thus, under *Brown*, Roth would be liable for the third quarter even if Dobbins had fired him in August.

ployee cannot do more than he can do, and § 6672 is not intended to hold him liable for failure to exercise authority he does not have, or, even if he has it, when his failure is not willful. Roth had authority to sign checks. This is a "significant factor because it generally comes with the ability to choose which creditors will be paid." *Burack v. U.S.*, 461 F.2d 1282, 198 Ct.Cl. 855 (1972). In this case, after late August, Roth did not have the ability to choose.

The majority rely upon *Howard v. U.S.*, 711 F.2d 729 (5th Cir.1983) (not binding). But Howard had "status, duty and authority," because he was a director, minority stockholder, treasurer, and executive vice president of the corporation, in addition to running its day-to-day operations. The status, duty and authority he possessed as treasurer and executive vice president continued during the periods in question. Presumably the chief executive officer had no authority to tell Howard as treasurer not to perform his duties as treasurer. The Fifth Circuit found: "Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he paid them." [3] In this case, a jury can find that Roth had no authority to pay taxes once that authority was withdrawn.

Two other Fifth Circuit cases emphasized by the government also are distinguishable. In *Mazo, supra,* the taxpayer was the general manager of the corporation, and his authority to sign checks or to use corporate funds to pay taxes was never removed. His defense was that he thought the controller was paying the taxes. In *Moore v. U.S.*, 465 F.2d 514 (5th Cir.), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973), taxpayers were corporate officers and a majority of the board of directors who, the court held, had ultimate authority over the expenditure of funds.

There is not a dearth of authority on the specific point that the court recognizes is presented by this case—the extent to which corporate employees who are under the direction of corporate officers are responsible persons. In *Geiger v. U.S.*, 583 F.Supp. 1166 (D.Ariz.1984), Geiger was a consultant who exercised an unusual degree of influence and control over a corporate business. Also, though he was not a shareholder, officer or director, he was authorized to sign checks, and did so, and assigned accounts receivable to a bank using the title of acting president. After a non-jury trial, the court found that he was not a responsible person. It distinguished *Howard:*

Although defendant maintains that plaintiff was in a position of responsibility for the acts giving rise to the violation in the instant case, in the recent decision of *Howard v. United States,* 711 F.2d 729 (5th Cir.1983), where a "subservient" person was held to have a duty to pay withheld taxes, the "person" there was a substantial shareholder, director, and executive vice president of the corporation. This Court is convinced that plaintiff has shown that although he signed the checks he did so only at the behest and direction of Mr. Kennelly, in the latter's capacity as president of Standard, and therefore, plaintiff lacked the "final word" as defined in *United States v. Graham* [309 F.2d 210 (9th Cir.1962)], *supra,* and in *Pacific National Insurance v. United States,* 422 F.2d 26 (9th Cir.1970).

*Id.* at 1168–69.

*Klotz v. U.S.,* 602 F.2d 920 (9th Cir.1979) is similar to the present case. Klotz was director, secretary-treasurer, and purchasing agent for a corporation and one of two joint signatories required for corporate checks. The corporation failed to pay its withholding taxes for the third and fourth quarters of 1969 and collapsed in January 1970. Persons who lent money to the cor-

---

**3.** Footnote 4 in *Howard* recognizes that a responsible person can have his authority re-moved. 711 F.2d at 734 n. 4.

poration began to take over its affairs, and their representative was added as a signatory to the bank account. Klotz fell out with the president, Howe. In mid-August 1969 his authority to sign checks was removed. He was "effectively" out of the corporation by the end of August and resigned in late October. The district court held that the lenders entirely controlled the corporation's finances, that neither Howe nor Klotz was a responsible person and that neither was willful. On appeal the Ninth Circuit found it unnecessary to reach the responsible person issue but affirmed on the ground that neither Klotz nor Howe was willful because under the facts neither was any more than negligent.

In the present case, the reasoning of the court is essentially circular and stands the statutory scheme on its head: "Because Roth has status and authority he is a responsible person and therefore bound to pay; his status and authority cannot be terminated because as a responsible person he is bound to pay." Responsibility to pay during the fourth quarter is an inference that must be drawn from status and authority, not the contrary. The "burdened with a trust" rationale is likewise circular: "For the fourth quarter the corporation held funds impressed with a trust in favor of the government; therefore Roth is a person responsible because he failed to carry out the trust obligations." Again, responsibility to pay must derive from status and authority, not status and authority from responsibility to pay.

Roth's lack of authority during the last quarter is demonstrated by the evidence that in October Dobbins took over in toto the affairs of the corporation.[4] Roth's pay stopped in late November, although he performed some duties for the corporation until early 1978.

II. Willfulness and "reasonable cause"

Willfulness is a required element for liability for the § 6672 penalty. Once one is found to be a responsible person, the burden of proving lack of willfulness is on him. *Mazo,* 591 F.2d at 1155. For this statute, willfulness is a voluntary, conscious and intentional act, or acting with a reckless regard of a known or obvious risk. *Id.* at 1154. It is "the state of the responsible person's mind, a subjective determination," *Id.* at 1157. Roth came forward with evidence to create a jury issue. Even if he continued to enjoy corporate status and authority to pay taxes during the fourth quarter despite the instructions of the president, it is for a properly instructed jury to decide whether—bearing in mind what Dobbins told him—Roth's failure to exercise his status and authority was willful. There was no separate jury instruction on willfulness because, as was recognized during the charge conferences, the instruction given on the effect of directions to Roth from president Dobbins contained its own instruction on willfulness.[5]

*Cellura v. U.S.,* 245 F.Supp. 379 (N.D. Ohio 1965) is parallel to the present case. Plaintiff was hired as manager of a restaurant. It was in serious financial difficulty and operating on a cash basis. As soon as funds were deposited in its bank account they were withdrawn so that they could not be attached. The sole stockholder and president of the corporation gave plaintiff instructions on the priority of creditors to be paid. He told her that her prime concern was to keep the restaurant operating and pay trade creditors ahead of all others. Tax liabilities were to be paid when there was money available to do so. Plaintiff carried out these instructions. Some funds were available for payment to the government, plaintiff paid the available funds over and they were applied against delinquent withholding obligations. The district court found that plaintiff was not liable under § 6672 because she did not act willfully:

---

4. I have not been able to find in the record support for the majority's statement that he resigned toward the end of the second quarter.

5. See also, comment of the court in overruling objection, recognizing that willfulness was an issue. Majority opinion, 779 F.2d at 1569.

On the state of this record the Court finds that plaintiff does not come within the scope of 26 U.S.C. §§ 6671(b) and 6672. Plaintiff's authority was limited to paying bills under the general instructions of her employer. While plaintiff did not have to check with her employer as to payment of a particular bill, she had instructions as to the priorities of classes of creditors, and under such instructions the Internal Revenue was at the end of the list.

The Court finds that plaintiff had no authority to pay taxes ahead of trade creditors, and the decision to prefer trade creditors over Internal Revenue originated with her employer, and not with the plaintiff. The Court further finds that there is no evidence that plaintiff on her own accord failed to pay taxes to the Internal Revenue when excess funds were available.

*Id.* at 382. A jury could reach a similar conclusion here. *See also, Klotz v. U.S., supra,* distinguishing negligence from willfulness.

As the case stands the government has a judgment for the fourth quarter without determination by a factfinder that Roth acted willfully with respect to that quarter. Failure to exercise authority is not necessarily willful when one has no express or implied authority from the corporation other than by direction of the president and thinks that his authority has been circumscribed. A jury might find that Roth's "subjective determination," *see Mazo,* was that he could not pay the taxes.

Finally, no factfinder has addressed the issue of "reasonable cause," which may excuse a failure to collect, account for, or pay over withholding taxes. *Mazo,* 591 F.2d at 1155; *Newsome v. U.S.,* 431 F.2d 742, 746 (5th Cir.1970). Under the circumstances of this case, reasonable cause is a jury issue. No instruction on reasonable cause was given or asked, presumably for the same reason set out above, that is, the plenary instruction that the jury "must

find" that Roth was relieved of liability if he was prevented from paying taxes by specific instructions from the president of the company pretermitted the necessity for it.

I respectfully dissent.