**In the Matter of James Edwin LYLE, Debtor.**

**James Edwin LYLE, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 86–8787. Adv. No. 86 0706.**

United States Bankruptcy Court, N.D. Alabama, S.D.

Jan. 25, 1988.

J. Harry Blalock, Birmingham, Ala., for debtor.

Richard E. O'Neal, Asst. U.S. Atty., Birmingham, Ala. and William A. Roberts, Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

STEPHEN B. COLEMAN, Bankruptcy Judge.

The debtor, James Edwin Lyle, filed his Chapter 7 bankruptcy petition under Title 11 of the United States Code on October 30, 1986. The Internal Revenue Service (IRS) filed a Proof of Claim in the amount of $94,574.75 in the Lyle bankruptcy case.

This Adversary Proceeding arose on the Complaint of the debtor to determine the dischargeability of his alleged indebtedness to the IRS in the "amount of $71,380.61 plus accumulated interest and penalty of $17,053.43" (sic).[1] The IRS claimed the amount based on its February 20, 1984, assessment against Lyle as "a person required to collect, account for and pay over withheld taxes"[2] for Falcon Electric Company of Addison, Texas, because Falcon Electric had failed to pay federal withholding taxes for the 3rd quarter of 1980 and the 1st, 2nd and 3rd quarters of 1981, and because no corporate assets were available to satisfy the liability. Lyle argues that he should not be held personally liable for the withholding tax liability of Falcon Electric Company because he was never a responsible party as contemplated by 26 U.S.C. § 6672, for the collection and payment of 941 withholding taxes.

---

1. The discrepancy between the amount claimed in the Proof of Claim filed by the IRS and the amount for which determination of dischargeability is sought results, apparently, from the accrual of interest and penalties beyond the date of the filing of the Complaint by the debtor.

2. 26 U.S.C. § 6672(a) provides: A person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under Section 6653 for any offense to which this section is applicable.

26 U.S.C. § 6672(a) (as amended by Sec. 9(a), Act of November 10, 1978, Pub.L. No. 95–628, 92 Stat. 3627).

A trial on the merits of the case was held and the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Mr. Lyle began his association with Falcon Electric Company, an electrical contracting company, in late 1977 or early 1978, when he was hired into the company by Mr. Guy Hankins, the 51% shareholder and President. Hankins formed Falcon Electric Company in 1977, incorporating it mainly for the purpose of facilitating the process of securing construction bonds. At the peak of its business, Falcon Electric Company enjoyed a sales volume of three million dollars annually and employed 25 to 30 employees.

While Hankins was clearly the number one man in the corporation, his active involvement was limited to hiring key employees and, periodically, reviewing other aspects of the corporation's operations. Indeed, his management style was basically a hands-off style, with Hankins delegating the day-to-day decision-making responsibilities to others.

Mr. Lyle was initially hired as a project estimator for Falcon Electric and was paid $325.00 per week. He was not a shareholder in the corporation, although the testimony of Hankins was that he had an option to become one. In addition to his duties as an estimator Lyle also undertook to perform, either by himself or in conjunction with others, the duties of hiring certain clerical personnel and paying trade creditors in the regular course of business. His duty to pay trade creditors necessarily required him to have check signing authority, and indeed he had that authority on the corporation's general and payroll accounts. By his own admission, this authority was exercised not only to pay trade creditors, but also to issue, from time to time, company payroll checks.

It is disputed as to whether Lyle was or was not an officer of Falcon Electric Company. Hankins maintained in his deposition testimony that Lyle was a Vice President of the corporation, and the United States argues likewise, offering as evidence a copy of a corporation bank account signature card with the initials "V.P., Sec." printed next to Lyle's signature on the card. The authenticity of the payroll account card is in doubt, however, and the Court is in no way able to glean from this evidence whether or not Lyle was in fact an officer of the corporation. Indeed, Mr. Lyle denies vehemently that he was a designated officer of the corporation. However, while the bank signature cards, listing Lyle to be an officer of Falcon Electric Company, are not conclusive on that point, the great weight of the testimony, including that of Patricia Dimon, a former bookkeeper at Falcon Electric Company, indicates that Lyle was, at least on a de facto basis, the number two man in the company and that he held certain managerial responsibilities and enjoyed certain perquisites relative to that status.

The United States contends that Lyle was made aware of the non-payment of the withholding taxes and cites, as evidence of that fact, the testimony of Hankins that he convened a meeting in 1981 of Hankins, Lyle, and Morris Dunlap, the company C.P.A., for the very purpose of determining the extent of indebtedness to the IRS, and to further decide how the debt was to be paid. Lyle disputes that he ever met with Hankins and Dunlap to discuss the tax liability and argues that he had no knowledge of the non-payment of withholding taxes until the IRS served him with a copy of its lien, which had been filed in June of 1981.

 Lyle's claim that he was in the dark as to the payment or non-payment of the corporate withholding taxes must be balanced, however, with the testimonial evidence, including Lyle's, that he was routinely involved in many areas of the day-to-day operations of the business, and that when a problem existed with respect to outstanding bills to be settled, or shortfalls in the company accounts, he was often made aware of the problem. It is difficult, then, to fathom how one so ostensibly involved in the running of a business could be completely and totally oblivious to the critical fact that withholding taxes were

not being paid to the government, and the Court, therefore, determines that Lyle's ignorance of the tax withholding liability was unreasonable and that Lyle knew or should have known of the failure of Falcon Electric Company to pay withholding taxes.

■ It is clear that Lyle left Falcon Electric Company to begin working at its sister company, Falcon Electric Service Company, however the evidence is in conflict as to when this occurred. Lyle claims that he left Falcon Electric Company sometime in April of 1981, thereby terminating his relationship with that company at that point in time. He is supported in his belief by Patricia Dimon. The United States, by assessing Lyle for the corporate tax liability for the 2nd and 3rd quarters of 1981, impliedly rejects this claim, offering testimony at trial that Lyle signed corporate checks beyond that time and otherwise arguing that he remained sufficiently involved with Falcon Electric Company into the 3rd quarter of 1981. The Court is unpersuaded, after reviewing the evidence, that Lyle remained actively involved in the day-to-day operations of Falcon Electric Company, Inc. beyond the end of April of 1981 and therefore, finds that Lyle severed his authority and status within Falcon Electric Company at the end of April of 1981.

## DISCUSSION

Since this case was heard, the Court of Appeals has decided the matter of the liability of Thomas Terrell for taxes due by Cahaba Resources,[3] and this Court now has the benefit of the findings and reasoning of the Eleventh Circuit Court of Appeals for the resolution of this Adversary Proceeding. This matter involves the determination of the term "responsible party," as used in Section 6672 of Title 26 U.S.C.A.

From the examination of the following cases, *Roth v. United States,* 779 F.2d 1567 (11th Cir.1986); *Thibodeau v. United States,* 828 F.2d 1499 (11th Cir.1987); *Mazo v. United States,* 591 F.2d 1151 (11th Cir. 1979), it appears that the Eleventh Circuit

has made clear the liabilities of Mr. Lyle in this case, which is similar to many other cases. It would not be amiss to philosophize, generally.

The success for the collection of withholding taxes and other income taxes in the United States is due to the voluntary assumption of responsibility to deduct and collect the taxes, in proper cases, by employers and other responsible persons, from employees. Since the employer is required to withhold from the wages of the employee the taxes due, such employer, necessarily, assumes the role of a trustee and the taxes withheld are subject to the "trust fund" theory.

The employer, therefore, at the beginning of the quarter, necessarily, creates a "trust fund" which is really the property of the United States, but left in the employer's account, which many employers continue to use in operation. Perhaps it would be better for all parties concerned to require the employer to keep the funds in a separate account or deposit them in a special tax account and not use them. It has been impossible for the United States to require these deposits in all cases. The existing practice of one payment per quarter has worked very well in most cases and the taxes are paid at the end of the quarter. The government could, no doubt, require earlier accounting and payment of the tax, however, this would entail burdensome returns and accounting. There is a potential danger and liability on the part of management which continues to use these "trust funds" that it may not be able to make the payment at the end of the quarter.

This is all very elementary and commonplace. It is, no doubt, that great consternation would be spread in the business world if statutory law strictly forbade the use of these funds as working capital.

## CONCLUSION

The legal question before the Bankruptcy Court assumes the validity of the "trust

---

3. *Terrell v. United States of America,* No. 87–7231 (11th Cir. Dec. 9, 1987) [835 F.2d 1439 (Table)] (per curiam).

fund" theory, but involves the more difficult question of what officers and persons of the business become liable for the tax. Section 6672 answers this problem (See Note # 2).

▮ The statute creates and impresses responsibility on a "responsible person." This responsibility is not complete, however, without the voluntary assumption or acceptance of an official position within the company, thereby creating such responsibility. The government never selects responsible parties and the law does not make one a "responsible person," involuntarily; he must have or assume that duty.

The debtor in this case was conferred, or assumed voluntarily, the responsibility for the payment of the tax in some circumstances. He had authority to draw checks, make disbursements and purchases. He, on occasion, paid the payroll in part or in whole.

The cases cited, supra, are conclusive that if a person has sufficient status, duty and authority within a corporation, he qualifies as a responsible person for the payment of taxes and the fact that he never exercised that authority or was forbidden by some higher official to pay the tax, does not relieve him in all cases.

In this case, we find that the debtor should be held accountable for the taxes due for the 3rd quarter of 1980, and the 1st and 2nd quarters of 1981.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the debtor, James Edwin Lyle is liable and should be assessed for the tax, interest and penalties due for said quarters.