**Mark GRAUNKE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 87 C 9493.**

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1989.

Charles F. Hendershot, Eva W. Tameling, Morgan & Tameling, Hinsdale, Ill., Frank J. DeSalvo, James M. Roche, Botti, Marinaccio, DeSalvo & Tameling, Oak Brook, Ill., for plaintiff.

Anton B. Valukas, U.S. Atty., Martin B. Lowery and Mary S. Rigdon, Asst. U.S. Attys., Chicago, Ill., Karen Smith, U.S. Dept. of Justice, Washington, D.C., Benjamin Norris, Michael von Mandel, Gail C. Ginsberg, Asst. U.S. Attys., Chicago, Ill., and Joseph Cammarata, Trial Atty., Tax Div., Washington, D.C., for U.S.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

HART, District Judge.

Plaintiff Mark Graunke seeks a refund of money paid against a 100% penalty assessment made by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 6672. The United States filed a counterclaim against plaintiff seeking a judgment in the amount of the unpaid balance of the assessment. The United States also brought suit against Ronald R. Curcio to reduce to judgment a 100% penalty assessment made against him for the same withholding taxes. Curcio did not contest his liability and a judgment has been entered against him. The case is now before the court after a bench trial for entry of findings of fact and conclusions of law.

The issue to be decided is whether the plaintiff Mark Graunke was a person responsible "to collect, truthfully account for, and pay over any tax imposed" within the meaning of Section 6672, Title 26, United States Code.

### I.

#### Findings of Fact

#### A.

During the trial the parties stipulated that if the plaintiff is liable to the United States on its counterclaim that the amount due is $153,998.64 plus interest from June 16, 1986, the date of a 100% penalty assessment.

As a part of the pretrial order the parties entered into a written stipulation of facts. Those facts, except as superseded by the parties' stipulation as to the amount due, are adopted as findings of fact as follows:

1. Plaintiff and counterclaim-defendant, Mark Graunke, is a citizen of the United States and resides at 8111 Salisbury Avenue, Lyons, Illinois 60534.

2. Additional defendant on counterclaim, Ronald Curcio, is a citizen of the United States and resides at 10 S. 344 W. Hampshire Lane, Hinsdale, Illinois 60521.

3. The defendant and counterclaimant is the United States of America.

4. The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(a) and 1346(c) and 26 U.S.C. § 7402(a).

5. On June 16, 1986, a delegate of the Secretary of the Treasuary made an assessment against Mark Graunke for a one hundred percent penalty pursuant to the provisions of 26 U.S.C. § 6672, by which the United States claims that Mark Graunke willfully failed to collect, truthfully account for and pay over withheld federal income and Federal Insurance Contributions Act taxes due and owing from Heritage Cabinet Co. for the fourth quarter of 1983 and all four quarters of 1984 and 1985. Notice of the assessment was made on plaintiff and counterclaim-defendant, Mark Graunke, on June 16, 1986.

6. As of January 26, 1988, plaintiff and counterclaim-defendant, Mark Graunke, had made payments of $84.90 and $52.48.

7. Plaintiff and counterclaim-defendant, Mark Graunke, was employed by Heritage Cabinet Co. during the fourth quarter of 1983 and all four quarters of 1984 and 1985.

8. On April 14, 1986 and June 9, 1986, a delegate of the Secretary of the Treasury made assessments against Ronald Curcio for one hundred percent penalties in the amounts of $167,179.46 and $66,559.64 re-

spectively pursuant to the provisions of 26 U.S.C. § 6672, by reason of his willful failure to collect, truthfully account for and pay over withheld federal income and Federal Insurance Contributions Act taxes due and owing for Heritage Cabinet Co. for the third and fourth quarters of 1982 and all four quarters of 1983, 1984, and 1985. Notice of each assessment was issued to and a demand for payment of said assessment was made on counterclaim-defendant, Ronald Curcio on April 14, 1986 with respect to the first assessment and June 9, 1986 with respect to the second assessment.

9. Additional defendant on the counterclaim, Ronald Curcio, admits that he willfully failed to collect, account for, and pay over withheld federal income and Federal Insurance Contributions Act taxes due and owing for Heritage Cabinet Co. for all of the periods for which he was assessed.

11. The documents received by the United States from Harris Argo Bank and Argo Savings and Loan pursuant to the subpoenaes issued by the court in this matter are true and accurate copies of bank statements, cancelled checks, and signature cards of Heritage Cabinet Co.

12. Internal Revenue Service Forms 4180 are reports of interview held with persons relative to recommendation of 100% penalty assessments, for Mark Graunke, Ronald Curcio, and Robert Petkus.

### B.

Based on the testimony and exhibits presented at trial, the court further finds as follows:

13. Plaintiff Mark Graunke is 38 years of age. Prior to becoming a full-time employee of businesses operated by Ronald Curcio, he performed part-time accounting services for him. Graunke completed two years of business college. Before working for Curcio he was a controller of a bank and supervised the work of five employees. Graunke became a full-time employee of companies owned and controlled by Ronald Curcio in the fall of 1983 at a salary of $30,000 per year. Curcio controlled Curon Enterprises which operated motels, a florist and a tailor shop. Curcio also was the sole stockholder of the Heritage Cabinet Co., Inc., the taxpayer whose withholding taxes were not paid. Graunke spent one and one-half to two days a week on Heritage Cabinet Co. matters. Curcio's headquarters and Graunke's office were located at 50 W. 75th Street, Willowbrook, Illinois. Heritage Cabinet Co.'s office and shop was located at 2000 W. 63rd Street, Chicago, Illinois.

14. In 1985 Curcio's companies filed for reorganization under Chapter 11 of the Bankruptcy Act. The companies have since gone into Chapter 7 proceedings and Curcio has filed a personal bankruptcy proceeding.

15. Graunke completed nine quarterly federal withholding tax returns (Form 941) for the last quarter of 1983, four quarters of 1984 and four quarters of 1985. Graunke signed three of the returns; five were signed by Curcio and one was left blank. On the return dated January 31, 1984, Graunke indicated his title to be "comptroller". The return dated July 31, 1984 signed by Graunke bears the title "agent." On the domestic corporation annual report to the Illinois Secretary of State dated July 13, 1984 signed by Graunke, he described himself as "president" of Heritage Cabinet Co., Inc. On the Annual Report for 1985, signed by Curcio, Graunke is listed as "treasurer" of Heritage Cabinet Co.

16. Heritage Cabinet Co. had a bank account at Argo Federal Savings during the period 1983–1985. As of November 18, 1983, Robert Petkus, Mark Graunke and Ronald Curcio were authorized to sign checks on the account. As of August 1, 1984, the persons authorized to sign checks were Ronald Curcio, Mark Graunke, Deborah M. DiGuilio and Richard Sosnewski. The United States introduced a number of checks signed by Graunke.

17. Deborah DiGuilio, Mark Graunke and Ronald Curcio testified that Curcio decided which creditors would be paid and which would be required to wait. There was never enough money in the Heritage

account to pay all creditors, meet the payroll and pay withholding taxes to the United States. DiGuilio issued most of the payroll checks.

18. Graunke warned Curcio of the liability for withholding taxes. Curcio instructed him not to pay the withholding taxes and told him that he intended to obtain a loan on his motel properties to pay the withholding taxes. After Curcio realized that Curcio had not obtained new financing he refused to sign the tax returns. Curcio then signed five returns and one was left blank.

19. Graunke completed an IRS questionnaire with respect to withholding taxes on December 26, 1985. He stated that he maintained the books and that he was the person responsible for the tax returns; that he was aware that tax liability was not being paid; that all or most operating expenses were paid; that he took no action to see that taxes were paid; and that Curcio was the person responsible for paying and depositing withheld taxes.

20. Ronald Curcio also completed an IRS questionnaire concerning withholding taxes. His responses were that Mark Graunke maintained the books and records; that payrolls were met; that other obligations were paid; that Mark Graunke was responsible for filing tax returns, paying withheld taxes, and making a deposit of federal tax. Ronald Curcio testified at trial that his answers were a mistake and that he alone was responsible for the failure to remit federal withholding taxes. Curcio paid very little attention to titles and corporate forms. By-laws, resolutions and minutes do not exist. Curcio treated his companies as a sole-proprietorship and made all financial and employment decisions.

21. Lloyd Clemetsen, a certified public accountant, testified. Clemetsen acted as outside accountant for Curcio's companies and now audits the books for Graunke's company. (Graunke purchased the assets of Heritage Cabinet Co. from a bankruptcy trustee and now operates the business.) Clemetsen testified that Curcio made all the financial decisions and decided who would and would not be paid by his business.

22. Robert Petkus testified that he was employed as general manager of Heritage Cabinet Co. He was responsible for day-to-day activities at the Chicago office and shop. Petkus was succeeded in this position by Robert Sosnewski. Graunke was only responsible for accounting matters. Curcio told Petkus and Sosnewski which bills would be paid and which would not be paid. Petkus did not consult Graunke about the payment of bills or the management of the business. Curcio decided what work would be done and what purchases would be made.

23. Curcio did not consult Graunke on financial matters. Although Graunke reminded Curcio of the liability for withholding taxes, Curcio withheld authority from Graunke to pay such taxes. Curcio did not involve Graunke in any of his efforts to obtain new financing.

24. Graunke did not have a sufficient degree of authority over corporate decision-making to make him a responsible person within the meaning of the Internal Revenue Code. Although he was authorized to sign checks all decisions as to who would be paid were made by Curcio. Graunke had no interest in the business and was not a part of financial planning decisions. Curcio made his decisions after consulting with his outside public accountant.

## CONCLUSIONS OF LAW

Sections 3102(a) and 3402(a) of the Internal Revenue Code of 1954, require an employer to deduct and withhold income and social security taxes from the wages paid to employees. Section 7501 of the Code provides that the withheld taxes shall be held by the employer as a special trust fund for the benefit of the United States. These "trust fund taxes" are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including salaries, or for any other purpose. Code Sections 3102(b), 3403, 7501(a).

An employer is required to report the amount of withheld taxes on its payroll tax

return (Form 941) which must be filed every quarter. The withholding taxes are due when the wages are paid, not on the actual due date of the quarterly tax return.

Section 6672 of the Code, provides that "[a]ny person required to collect, truthfully account for, and pay over any tax ... who willfully fails to collect such tax, or truthfully account for and pay over such tax ..." shall be personally liable to the United States for the full amount of taxes not collected or not paid to the United States. "Person," as used in Code § 6672 includes an officer or employee of a corporation who is under a duty to collect and remit the taxes to the United States. Code § 6671(b).

Section 6671(a) of the Code provides that the "100-percent penalty" liability shall be assessed and collected in the same manner as taxes. A federal tax assessment is deemed to be correct unless and until the person against whom the assessment was made proves by a preponderance of the evidence that he is not liable for the taxes sought to be collected. *Ruth v. United States,* 823 F.2d 1091, 1092–93 (7th Cir. 1987).

For liability to exist under Section 6672, two factors must exist: the person must be required to collect, truthfully account for and pay over the employment taxes, and he must have willfully failed to pay over the trust fund taxes. *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed. 2d 48 (1970). The issue in this case is whether the plaintiff proved that he was not a "responsible person."

The facts which courts have relied upon in determining whether individuals are persons responsible for the payment of taxes withheld from the wages of the employees are whether the individual owns stock in the corporation, holds a corporate office, has authority to sign checks, hires and fires employees, exercises control over the corporation's finances, pays other creditors instead of the United States, and signs tax returns. *Wright v. United States,* 809 F.2d 425, 427 (7th Cir.1987); *Purdy Co. of*

*Illinois v. United States,* 814 F.2d 1183, 1187–88 (7th Cir.1987).

The issue presented is whether Graunke, in order to escape liability, had an obligation to pay withholding taxes contrary to the instructions of his employer, because he had checkwriting authority. The United States argues, based on *Howard v. United States,* 711 F.2d 729 (5th Cir.1983), *Roth v. United States,* 779 F.2d 1567 (11th Cir. 1986), and *Gephart v. United States,* 818 F.2d 469 (6th Cir.1987), that only if Graunke wrote checks contrary to his employer's instructions, or refused to sign any checks, would he be insulated from liability.

Recently, the United States Court of Appeals for the Tenth Circuit decided a case similar to this one. *Jay v. United States,* 865 F.2d 1175 (10th Cir.1989). The court reversed a summary judgment under Section 6672 in favor of the United States. Like the plaintiff, Jay was a controller of a corporation with checkwriting authority. He was not an owner or director of the corporation. As in this case the corporation's president gave specific instructions on which bills to pay and acknowledged his own withholding tax liability. In remanding the case to the district court for a trial on the issue of the plaintiff's corporate decisionmaking authority, the court discussed *Howard, Roth,* and *Gephart,* stating as follows:

In the seminal case, *Howard v. United States,* 711 F.2d 729 (5th Cir.1983), the court sustained a grant of summary judgment in favor of the Government and against taxpayer Howard, who it regarded as a responsible person under section 6672(a). There, Howard served as director, minority shareholder and executive vice president of a corporation and managed the corporation's day-to-day operations. The president and majority stockholder at the corporation, Paul Jennings, instructed Howard not to pay to the Government federal withholding taxes.

The court held that "Howard's duties, prerogatives, and prior acts are more than sufficient to establish that he was a 'responsible person' for the purpose of section 6672(a) liability." *Id.* at 734. In

rejecting Howard's defense of lack of authority to pay taxes, the court observed that Howard would have lost that authority only after paying the taxes, and stated further:

Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations. Faced with the possibility of leaving the frying pan with only minor burns, Howard chose instead to stay on in the vain hope of avoiding the fire. While we appreciate the difficulty of his position, we cannot condone his abdication of the responsibility imposed upon him by law.

*Id.* at 734 (footnote omitted).

Following the *Howard* case, the Eleventh Circuit in *Roth v. United States*, 779 F.2d 1567 (11th Cir.1986), held, as a matter of law, that taxpayer Roth, the vice president and minority shareholder of a corporation who handles the corporation's day-to-day operations and wrote checks on its behalf, was a responsible person under section 6672(a). The court rejected a jury verdict in Roth's favor and granted a judgment notwithstanding the verdict in favor of the Government, despite Roth's testimony that company president Dobbins instructed Roth to pay other creditors, and not the Government, out of corporate funds which were insufficient to pay all creditors. The court emphasized:

We must bear in mind that, even after he was instructed by Dobbins not to pay the government its withheld funds, taxpayer as manager of the day to day affairs of the company, caused deductions to continue to be made from the weekly pay checks given to the company's employees, fully knowing that he would not transmit such funds to the government.

*Id.* at 1571.

In *Roth*, Judge Godbold dissented from the majority opinion on grounds that Dobbins' instructions not to pay further taxes to the Government created a jury issue. The dissent noted that Roth held less corporate authority than did Howard in the Fifth Circuit case.

Finally, the Sixth Circuit dealt with the "Nuremberg" defense in *Gephart v.*

*United States*, 818 F.2d 469 (6th Cir. 1987), in the context of a general manager of a corporation, who was not a shareholder, director or officer, but who possessed checkwriting authority. Taxpayer Gephart contended that he did not serve the corporation as a responsible person within the meaning of section 6672 because David Bosset, a fifty percent shareholder and officer of the corporation, exercised final authority over which creditors to pay and had told Gephart that it was none of his business that the company failed to pay withholding taxes to the Government.

The trial court, after a full trial, held that Gephart was a responsible person within the meaning of section 6672 of the Code, finding that Gephart exercised control over the day-to-day administrative, accounting and operating functions of the business. On appeal, the Sixth Circuit affirmed, holding that "there is evidence to support the [trial] court's finding that [Gephart] was a responsible person who willfully failed to pay over taxes to the government." *Id.% at 475.*

The court cited *Howard* and *Roth* in rejecting Gephart's claim that he was not a responsible person because he received instructions from the corporation's president that Gephart bore no responsibility for paying the withholding taxes.

We must note, however, that Gephart's defense of nonresponsibility failed, not as a matter of law, but as one of fact. The court in *Gephart* outlined matters of fact to be relied on in determining who is a responsible person:

Among the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees are: (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in

**394**

control of the financial affairs of the corporation.

*Id.* at 473.

Applying the foregoing principles to the present case, the Government has not established its case as a matter of law. Unlike the circumstances presented in *Roth* and *Howard,* taxpayer Jay did not manage the day-to-day affairs of the corporation, nor did he serve as an officer. His authority to pay bills was circumscribed by Helmuth. This is not a case where the taxpayer necessarily possessed authority as a treasurer to pay bills, as in *Howard;* nor did Jay receive generalized instructions on priorities, as in *Roth.* Here, the president and general manager of the corporation specifically told Jay to pay other creditors, not the United States.

Although it appears from the record that Jay functioned as the officer manager of the company and could write checks, the evidence indicates that he carried out these responsibilities subject to the executive committee's instructions and restrictions on which creditors he should pay.

We do not hold that Jay is absolved of liability. However, the record before us does not establish Jay's liability as a matter of law. Rather, we remand the case for a trial on the merits. The issues of liability are for the trier of fact to determine, upon all the evidence, taking into account questions of credibility and those reasonable inferences flowing from the evidence which may establish, or fail to establish, that Jay possessed a sufficient degree of authority over corporate decisionmaking so as to make him a responsible person within section 6672 of the Code. *See Howard, supra; Roth, supra; Gephart, supra; Kizzier v. United States,* 598 F.2d 1128 (8th Cir. 1979); *Hartman v. United States,* 538 F.2d 1336 (8th Cir.1976).

Based on *Jay,* it does not appear that the law has gone so far.as to require that a person must disregard checkwriting instructions in order to avoid liability. Rather the focal point in all of the cases is whether the plaintiff "possessed a sufficient degree of authority over corporate decisionmaking to make him a responsible person."

In this case the facts indicate that Graunke was not a responsible person. (Curcio has acknowledged his liability.) The evidence shows little attention to corporate forms and titles. It shows rather that Curcio, the sole stockholder, made all financial decisions and strictly controlled the payment of creditors. There is no evidence that Graunke could or would have, in the short time he was employed, overridden Curcio's payment decisions. It is not clear that Graunke was even aware of how the financial matters would be conducted. Graunke, located at a different office, was not in charge of day-to-day activities of the Heritage Cabinet Co. That was the responsibility of Petkus and Sosnewski. Graunke's only responsibilities were accounting matters and bill-paying at the direction of Curcio.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to enter a judgment in favor of the plaintiff and against the United States awarding the plaintiff a tax refund in the amount of $137.38 and dismissing the counterclaim of the United States with prejudice.