**In re Glen Thomas SHEPPARD, Debtor.**

**Glen Thomas Sheppard, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 98–9802–B.**
**Adversary No. 99–80143–B.**

United States Bankruptcy Court,
D. South Carolina.

March 6, 2000.

Chalmer Poston, Charleston, SC, for plaintiff.

Brian Kaufman, Washington, DC, for defendant.

## ORDER

WM. THURMOND BISHOP, Bankruptcy Judge.

This matter came before the Court on the plaintiff's adversary complaint seeking: (1) a determination, pursuant to Section 505 of the Bankruptcy Code, that he was not liable for a Trust Fund Recovery Pen-

alty assessment made against him by the defendant, pursuant to 26 U.S.C. § 6672 in the amount of $75,608.97; and (2) for an award of attorney's fees pursuant to 26 U.S.C. § 7430. A trial was held in this matter on December 14, 1999. After considering all of the evidence presented at trial, a judgment in favor of the defendant is hereby entered on both counts of the complaint for the reasons set forth below.

### FINDINGS OF FACT

The plaintiff, Glen Sheppard, is an individual who filed a Chapter 13 bankruptcy case on November 5, 1998, and is the debtor in this bankruptcy case.

3 M Construction Company, Inc. ("3 M Construction") failed to fully pay its Form 941 federal employment tax liabilities for the tax periods ending June 30, 1996, September 30, 1996, and December 31, 1996.

As a result of these unpaid liabilities, the defendant assessed a Trust Fund Recovery Penalty against Sheppard on June 28, 1999 in the amount of $75,608.97 based upon the outstanding "trust fund" portion of 3 M Construction's unpaid employment taxes for the periods ending June 30, 1996, September 30, 1996, and December 31, 1996. The trust fund portion of 3 M Construction's liabilities represented the employee's portion of the FICA tax and the employee's income tax withholding. The assessment was made after the defendant determined that Sheppard was a "responsible officer" of 3 M Construction and that he willfully failed to ensure that the trust fund taxes of the corporation were remitted during the periods at issue.

In 1988, Sheppard founded CHS Engineering Associates, Inc. ("CHS Engineering") to provide architectural design services for construction companies. He was the President of this corporation and was responsible for the payment of the payroll and employment tax liabilities for the corporation.

In early 1994, CHS Engineering was hired by 3 M Construction to provide architectural design services for a project where 3 M Construction was the general contractor. 3 M Construction had been formed in the early 1970s by George Phillip Murphy. At the time 3 M Construction hired CHS Engineering, Murphy was the President and sole shareholder of 3 M Construction.

After completing the project, Sheppard and Murphy entered into discussions regarding the merging of their businesses into a "design-build" operation where one corporation would provide both the design and construction for building projects.

While Sheppard and Murphy entered into discussions about formally merging their businesses at that time, no formal merger occurred. However, Sheppard and Murphy began operating their businesses together during 1994. To this end, in October 1994, Murphy hired Sheppard as an employee of 3 M Construction. Murphy appointed Sheppard as the Vice-President of 3 M Construction and granted him a salary equal to his own. Murphy remained the sole shareholder of 3 M Construction. On December 8, 1994, Sheppard was granted signature authority over 3 M Construction's corporate bank account at First Citizens Bank. All corporate expenditures were paid out of this account, including payroll.

As Vice President of 3 M Construction, Sheppard was responsible for all the architectural design aspects of 3 M Construction's business. In this position, Sheppard had primary responsibility for hiring any "design" consultants required for a project, which included architectural engineers, electrical engineers, and plumbing engineers and determining how much they were to be paid, even though he consulted with Murphy prior to any hires. All of these contractors were paid directly by 3 M Construction, not CHS Engineering, and were supervised by Sheppard in his position as Vice President of 3 M Construction.

In his position of Vice President of 3 M Construction from October 1994 until he left the corporation at the end of 1996, Sheppard was responsible for calculating the estimated construction costs of 3 M Construction. Sheppard also was responsible for the scheduling and procurement of supplies for the construction projects of 3 M. As a result of his knowledge of the costs of potential projects, Sheppard worked directly with Murphy in preparing bids for new projects and negotiated contracts with clients and subcontractors on behalf of 3 M Construction. Sheppard signed every construction contract entered into by 3 M Construction as its design agent.

Sheppard also was substantially involved in the financial affairs of the corporation from the time he was hired until he left the corporation at the end of 1996. Sheppard assisted Murphy in the hiring of Raye Albers as the bookkeeper of the corporation in the fall of 1994. After she was hired, Sheppard worked closely with Albers to teach her the financial side of the construction business and to assist her with the corporation's financial affairs. Sheppard assisted Albers in the preparation draw requests for 3 M Construction with respect to its various projects. Sheppard also sat down with Albers once a month to review the accounts receivable of the corporation and to develop a payment schedule for the corporation's accounts payable. Sheppard then discussed the payment schedule with Murphy and they jointly agreed as to how the corporation's liabilities would be paid. Both Sheppard and Murphy then signed checks on behalf of the corporation to pay the corporation's expenses, including payroll. In fact, one of Sheppard's duties as Vice President of the corporation was to sign checks for the corporation when necessary to pay corporate expenses. While Murphy was the sole owner of the corporation, Sheppard and Murphy were clearly partners in the business and jointly made corporate decisions, including the payment of corporate creditors.

During 1995, 3 M Construction's business grew at a healthy pace. However, the corporation experienced cash flow problems. To this end, Sheppard made personal loans to 3 M Construction to assist with the payment of payroll. Further, from the time he was hired until the end of 1996, Sheppard personally guaranteed lines of credit for supplies on behalf of the corporation. Sheppard also co-signed loans for the purchase of a vehicle and office equipment for the corporation. As a result of the expansion of the business, Sheppard also began spending more time at the corporation's construction sites and became more involved in the day-to-day management of the corporation's projects. These management responsibilities continued through the end of 1996.

Sheppard first became aware that 3 M Construction had not timely paid its Form 941 federal employment tax liabilities at the end of March 1996 when Albers came to him with the corporation's unfiled Form 941 tax return and informed him that the corporation had not paid its outstanding tax liability for that period. Sheppard then contacted with Neal Meyer, the corporation's accountant, to discuss the unpaid taxes and to develop a plan to pay the liabilities for the first quarter of 1996. Based upon these discussions, Meyer negotiated an installment plan with the IRS to satisfy this liability. However, despite Sheppard's testimony that he monitored the installment agreement and recalled that payments were scheduled to satisfy the first quarter of 1996 liability, no payments were in fact made on this liability until 1997, after Sheppard had left the corporation.

The tax problems continued to get worse for 3 M Construction during the second quarter of 1996. The corporation failed to make any federal tax deposits with respect to its federal employment tax liability for this period. As a result, at the end of the quarter (June 30, 1996), the corporation had an unpaid federal employment tax lia-

bility of $18,550.72. Sheppard became aware of this liability in July 1996. However, Sheppard took no actions to assure that the liability was satisfied. While Sheppard had discussions with Albers and Murphy regarding the nonpayment of the tax liabilities, no payments in fact were made on the tax liability at the time even though the corporation had adequate funds available to satisfy the liability.

3 M Construction continued to shirk its tax responsibilities for the remainder of 1996. Despite accruing a federal employment tax liability in the amount of $33,434.49 for the third quarter of 1996 and a liability of $39,172.55 for the fourth quarter of 1996, the corporation made no payments with respect to these liabilities. Instead, the corporation continued to prefer its other creditors over the defendant.

Sheppard gave notice to Murphy that he was going to leave the corporation in September 1996. However, Sheppard continued to work until the end of 1996 and his responsibilities with respect to the corporation did not change after he gave notice of his departure. In fact, Sheppard continued to sign checks on behalf of the corporation up until December 31, 1996. Sheppard also received a salary from the corporation through the end of November 1996 and wrote the check paying his own salary for October 1996.

Despite 3 M Construction's financial difficulties during the later part of 1996, the corporation had more than sufficient funds available to satisfy its federal employment tax liabilities. Further, despite his knowledge that the corporation had not paid its federal employment tax liabilities for the second, third, and fourth quarters of 1996, Sheppard continued to pay corporate creditors to the detriment of the defendant by signing corporate checks. The following chart reflects the funds available to 3 M Construction and the payments made on behalf of the corporation by Sheppard:

Summary of Bank Statements of 3M Construction Company and Checks Signed by Sheppard on First Citizens Bank Account from May 1996 through December 1996

| Month | Beginning Balance | Ending Balance | Total Deposits | Total Debits | No. of Checks Signed by Sheppard | Total Amount of Sheppard Checks |
|---|---|---|---|---|---|---|
| May | $10,311.20 | $ 23,110.03 | $241,707.97 | $208,286.74 | 48 | $ 55,076.82 |
| June | $23,110.03 | $101,911.53 | $253,199.47 | $174,397.97 | 59 | $ 58,054.89 |
| July | $101,911.53 | $ 13,377.25 | $114,691.27 | $203,225.55 | 42 | $ 29,634.15 |
| August | $13,377.25 | $ 72,462.85 | $294,490.12 | $235,354.52 | 88 | $126,081.31 |
| Sept. | $72,462.85 | $ 40,585.16 | $168,238.27 | $200,115.96 | 97 | $ 52,310.92 |
| Oct. | $40,585.16 | $ 27,796.75 | $180,783.50 | $193,571.91 | 173 | $ 86,522.87 |
| Nov. | $27,796.75 | $ 53,208.85 | $355,520.93 | $330,108.83 | 103 | $112,753.60 |
| Dec. | $53,208.85 | $165,002.68 | $369,095.25 | $257,301.42 | 27 | $ 35,372.09 |
| TOTALS | | | $1,977,726 | $1,802,362 | 637 | $555,806.65 |

While Sheppard signed 637 checks on 3 M Construction's corporate account between May and December 1996 in the total amount of $555,806.65, none of these checks was to the Internal Revenue Service with respect to the corporation's outstanding employment tax liabilities, even though sufficient funds were available in the corporation's account to satisfy these liabilities.

Sheppard also made a $50,000 loan to 3 M Construction to assist the corporation with its financial difficulties. While it is unclear whether this loan was made before Sheppard left 3 M Construction or after he departed, Sheppard did not designate that these funds be applied to the corporation's federal employment tax liability and took no actions to ensure that the funds were used for that purpose, even though he was aware that the corporation had not paid its tax liabilities.

## ANALYSIS

### I. Trust Fund Recovery Penalty

■ Sections 3102(a) and 3402(a) of the Internal Revenue Code (26 U.S.C.) require an employer to withhold federal income

taxes and the employees' share of social security taxes from the wages paid to its employees. The taxes withheld from each employee's wages constitute a special fund held in trust under Section 7501 of the Code for the exclusive use of the United States. These "trust funds" shall not be used to pay the employer's expenses, including salaries, or for any other purpose. The withholding tax liability arises as soon as wages are paid, not when the quarter's tax return is due. *Begier v. I.R.S.*, 496 U.S. 53, 61, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

Section 6672 of the Internal Revenue Code imposes liability for a company's unpaid "trust fund" taxes upon any person "required to collect, truthfully account for, and pay over any tax ..." who willfully fails to do so. Section 6672, the "Trust Fund Recovery Penalty" provision, is a collection device designed to ensure that the unpaid trust fund taxes are paid, if not by the defaulting corporate employer, then by those persons responsible for the default. *Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir.1990). It is a liability separate and distinct from that of the delinquent corporation. *Plett v. United States*, 185 F.3d 216, 218 (4th Cir.1999).

Personal liability under Section 6672 properly is imposed upon the person or persons who were: "(1) responsible for collecting, accounting for, and remitting payroll taxes, and (2) who willfully failed to do so." *Plett*, 185 F.3d at 218; 26 U.S.C. § 6672; see *O'Connor v. United States*, 956 F.2d 48, 50 (4th Cir.1992), *Malloy v. United States*, 17 F.3d 329, 331 (11th Cir. 1994); *Williams v. United States*, 931 F.2d 805, 810, *reh'g granted and opinion supplemented*, 939 F.2d 915 (11th Cir.1991); *Smith*, 894 F.2d at 1553; *Thibodeau v. United States*, 828 F.2d 1499, 1504 (11th Cir.1987); *Roth v. United States*, 779 F.2d 1567, 1571–72 (11th Cir.1986); *Howard v.*

*United States*, 711 F.2d 729, 734–35 (5th Cir.1983). The person required to collect, account for, and remit payroll taxes is generally referred to as a "responsible person." *Plett*, 185 F.3d at 219. However, a company may have multiple responsible persons for purposes of Section 6672. *Id.; O'Connor*, 956 F.2d at 50.

In a Section 6672 case the Government first should submit evidence of a tax liability and assessment. Tax assessments are presumptively correct, *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933), and Certificates of Assessments and Payments evidencing a tax assessment and liability are presumed correct and establish a prima facie case of liability. *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir.1980); *United States v. Chila*, 871 F.2d 1015, 1017–18 (11th Cir.), *cert. denied*, 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989).

Once the Government has submitted evidence that taxes were assessed and unpaid, individuals against whom the trust fund recovery penalty has been assessed have the burden of proving by a preponderance of the evidence that they were not "responsible persons" or that they did not "willfully" fail to pay over the unpaid trust fund taxes. *Pomponio*, 635 F.2d at 296 (4th Cir.1980); *see In re Landbank Equity Corp.*, 973 F.2d 265, 270–271 (4th Cir. 1992).[1]

The Certificate of Assessments and Payments admitted into evidence with respect to the Trust Fund Recovery Penalty assessment against the plaintiff established a prima facie case of the plaintiff's liability. The burden therefore shifted to the plaintiff to prove, by a preponderance of the evidence, that (1) he was not a "responsible officer" or (2) that he did not "willfully" fail to pay over the unpaid trust taxes to

1. The Supreme Court has decided to consider the issue of the burden of proof in taxes that are presented to the Bankruptcy Court. *Raleigh v. Illinois Dept. of Revenue*, —— U.S. ——, 120 S.Ct. 784, 145 L.Ed.2d 659 (2000), granting certiorari in *In re Stoecker*, 179 F.3d 546 (7th Cir.1999).

the defendant. The plaintiff has failed to meet its burden on either point.

### (a) *Responsibility*

 In order to determine whether an individual is a responsible officer, this court must "undertake a pragmatic, substance-over-form inquiry into whether an officer or employee so 'participate[d] in decisions concerning creditors and disbursement of funds' that he effectively had the authority—and hence a duty—to ensure payment of the corporation's payroll taxes." *Plett,* 185 F.3d at 219 (citing *O'Connor,* 956 F.2d at 51). The important inquiry "is whether the person had the 'effective power' to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to the pay the taxes owed." *Plett,* 185 F.3d at 219. The following factors serve as indicia of the requisite authority:

1. Served as an officer of the company or as a member of its board of directors;
2. Controlled the company's payroll;
3. Determined which creditors to pay and when to pay them;
4. Participated in the day-to-day management of the corporation;
5. Possessed the power to write checks; and
6. Had the ability to hire and fire employees.

*Id.; Thibodeau,* 828 F.2d at 1503–04; *George,* 819 F.2d at 1011; *Roth,* 779 F.2d at 1569.

 Based upon the evidence presented at trial, there is no doubt that Sheppard was a responsible officer of 3 M Construction. Sheppard's responsibilities as Vice President of the corporation and his actions in that position clearly satisfy the standard enunciated above as he satisfied all six factors enunciated in *Plett.*

First, Sheppard was an officer of the corporation as he was named Vice President of the corporation by its President and only shareholder. Second, Sheppard also had control over the company's payroll. Sheppard was primarily responsible for determining the salaries of all the design contractors and employees of 3 M Construction and worked closely with the company's bookkeeper to schedule payments of the corporation's payroll. Third, on most occasions, Sheppard and Murphy jointly determined what creditors to pay and when to pay them. Fourth, Sheppard participated in the day-to-day management of the corporation as he oversaw all of the design aspects of the business, while also managing construction projects and reviewing the day-to-day finances of the corporation. Fifth, Sheppard had the ability to write checks on behalf of the corporation and exercised this authority thoroughly during periods at issue during 1996. Sixth, as head of the design aspects of the corporation, Sheppard had the ability to hire and fire employees in this area, even though he consulted with Murphy before making these decisions.

 The plaintiff has argued that he was not a responsible officer of 3 M Construction because he was not "ultimately" responsible for any decisions made by the corporation as Murphy was the sole shareholder of the corporation and could fire him at any time. However, this argument is without merit as liability under Section 6672 is not limited to the person with ultimate fiscal control, but encompasses all persons in a position to exercise authority over the corporation's financial affairs, which included Sheppard. *Plett,* 185 F.3d at 222, *Smith,* 894 F.2d at 1553; *Thibodeau,* 828 F.2d at 1504; *George,* 819 F.2d at 1011; *Roth,* 779 F.2d at 1572; *Howard,* 711 F.2d at 734–35. Further, ownership of the company is not necessary for an individual to be a responsible officer. *Plett,* 185 F.3d at 222; *Thibodeau,* 828 F.2d at 1504. The fact that one responsible person reported to another and served in his or her position at the will of another responsible person does not affect the duty to collect, account for or pay over

trust fund taxes. *Plett*, 185 F.3d at 221; *Smith*, 894 F.2d at 1553; *Thibodeau*, 828 F.2d at 1504; *Roth*, 779 F.2d at 1572.

■ Further, even if Sheppard's unconvincing assertions that he had no independent authority to sign checks for the payment of taxes without the express approval of Murphy were true, this would still not relieve him of responsibility under Section 6672. An otherwise "responsible person" is not relieved of responsibility despite instructions not to pay the trust fund taxes by an owner or CEO of the company who has the power to fire that individual. *Thibodeau*, 828 F.2d at 1504; *Roth*, 779 F.2d at 1572; *Howard*, 711 F.2d at 734.

### (b) *Willfulness*

■ To determine whether a responsible person "willfully" failed to collect, account for or remit payroll taxes to the United States, the court must "inquire whether the 'responsible person' had 'knowledge of nonpayment or reckless disregard of whether the payments were being made.' " *Plett*, 185 F.3d at 219 (citing *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir.1992)). A responsible person's intentional preference of other creditors over the United States with knowledge of the nonpayment of payroll taxes establishes his willfulness as a matter of law. *Plett*, 185 F.3d at 219; *Pomponio*, 635 F.2d at 298. An intentional preference is shown by establishing that the responsible person knew or recklessly disregarded the existence of an unpaid payroll tax deficiency. *Plett*, 185 F.3d at 219; *Turpin*, 970 F.2d at 1347. A showing of willfulness does not mean that the responsible person acted with a "bad motive or the specific intent to defraud the Government or deprive it of revenue." *In re Lynch*, 187 B.R. 353, 357 n. 9 (Bankr.N.D.Ala.1995).

■ As Sheppard was responsible officer of 3 M Construction, his failure to pay the trust fund taxes of the corporation was necessarily willful. Sheppard was aware of the corporation's employment tax deficiencies for the second quarter of 1996, the first period at issue, in July 1996. Despite this knowledge, Sheppard continued to prefer other creditors over the defendant by writing checks to satisfy corporate liabilities, including his own salary. Sheppard's preference of other creditors over the defendant was substantial, as he wrote 637 checks totaling $555,806.65 during the second, third, and fourth quarters of 1996 without making any payments to the defendant for employment taxes even though corporate funds were available during to pay the outstanding liability for each period. In fact, nearly five times the necessary funds to satisfy the corporation's trust fund tax liability were deposited in the corporation's bank account during December 1996 alone.

As the plaintiff was a responsible officer of 3 M Construction during the second, third, and fourth quarters of 1996 and he willfully failed to ensure that the corporation's trust fund taxes were satisfied for this period, the Trust Fund Recovery Penalty assessment against the plaintiff in the amount of $75,608.97 must be upheld in its entirety.

## II. Attorney's fees

■ The plaintiff has also petitioned this court for an award of administrative and litigation costs with respect to this matter. In order for an award of costs, the plaintiff must have been a "prevailing party" in this litigation. 26 U.S.C. § 7430(a). In order to be a prevailing party, the plaintiff must have substantially prevailed with respect to the amount in controversy or substantially prevailed with respect to the most significant issue or set of issues presented in this litigation. 26 U.S.C. § 7430(c)(4)(A).

As the plaintiff has not substantially prevailed as to any issue in this matter, he is not a prevailing party in this litigation and is not entitled to an award of administrative costs or litigation costs.

JUDGMENT IS ORDERED in favor of the defendants on both counts of the complaint.

AND IT IS SO ORDERED.